UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-166-R

JAMES G. GILLES                                                          PLAINTIFF

v.

THOMAS I. MILLER, et al.                                              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction (Docket #12). Defendants have filed a response (Docket #18), to which Plaintiff has replied (Docket #21). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion for a Preliminary Injunction is DENIED.

## BACKGROUND

Plaintiff James G. Gilles challenges the Murray State University (MSU) solicitation/sponsorship policy arguing that it arbitrarily restricts the right of individual speech in open areas of MSU's campus. Plaintiff seeks relief in the form of a preliminary injunction enjoining Defendants from applying the speech requirements set out in the MSU solicitation/sponsorship policy to the individual religious expression of Plaintiff.

Plaintiff is a traveling evangelist for his religion. Pursuant to a religious tenet, Plaintiff strives to publicly proclaim and communicate his faith and convictions at public universities around the country. He typically relies on oral communication and literature distribution as the means of conveying his message. Plaintiff does not seek monetary gain through this activity, nor does he elicit signatures or membership to any organization.

MSU is a public institution of higher education located in Calloway County, Kentucky. MSU is governed by an eleven person Board of Regents which has exclusive authority to govern the use of MSU's property.

Plaintiff began visiting and speaking on the MSU campus in the 1980's. Plaintiff states that he seeks to peacefully share his religious message and has no intent to harass anyone. While speaking on the MSU campus, Plaintiff made the following statements:

Not every sorority girl is a whore, just most of them.

So you admit you're not listening? God have mercy on her, she's only a woman . . . Women are not logical.

Hey, some of you girls at MSU are worse than prostitutes. You don't even charge. You do it free.

Plaintiff also called a sixty-five year old female professor a whore for wearing make-up and told two women jogging by him wearing shorts that they were harlots that deserved to be raped. There were numerous complaints about these statements.

Plaintiff indicates that during a visit to MSU in 1991, he was directed by Defendant Jim Baurer, Director of the Curris Center, to use the west side of the Curris Center for his activities.[1] This area is surrounded with several buildings that are heavily used by a large number of students. Plaintiff states that Baurer informed him that this area of the Curris Center serves as the designated free speech area on the MSU campus.

On October 4, 2004, Plaintiff returned to MSU. He went to the area located just west of the Curris Center and began to speak with individuals about his religious convictions and cultural issues

---

[1] The Curris Center is the student center and contains the University bookstore, numerous meeting rooms, a theatre, administrative offices, guest rooms, and a cafeteria.

2

of the day.  After approximately eighty minutes, Plaintiff was approached by Baurer who informed him that he must stop speaking on campus unless he could secure sponsorship from the university as his speech was considered solicitation.  Plaintiff states that he announced the sponsorship requirement to those around him and that several students voiced a sincere desire to sponsor him. Plaintiff states that Baurer rejected this alternative, advising that no individual student would be permitted to sponsor Plaintiff.  Plaintiff states that without the requisite sponsorship, and in fear of arrest, he left the campus.

Later on in that day, Plaintiff returned to MSU and spoke with Defendant Don Robertson, Vice President of Student Affairs at MSU, about the restriction.  Robertson confirmed Baurer's interpretation and application of the solicitation/sponsorship policy.  He reiterated that Plaintiff would be required to obtain sponsorship by a student organization or the university itself to speak on any part of MSU campus.

In a subsequent conversation that day, Baurer described Plaintiff's expression as solicitation and directed Plaintiff to the solicitation/sponsorship policy found in MSU's Student Life Handbook. That provision provides:

**University Policy on Campus Solicitation**

Murray State University has the duty and responsibility to maintain a safe and healthy environment conducive to its principal mission of education.  At the same time, the university recognizes and respects the constitutional protection of free speech as well as the individual student's right to privacy.  Accordingly, the university hereby adopts this solicitation policy for the purpose of establishing reasonable time, place, and manner restrictions on and around campus solicitation.

Even within areas open to solicitation, this contact may not substantially disrupt or materially (or significantly) interfere with the educational, administrative, or operational activities of the university.  Commercial speech which is false, fraudulent or misrepresentative is not permitted.  Events which are in violation of local, state or federal law, or rules, regulations, and guidelines of the university are

prohibited.

Any outside organization or individual wishing to come on campus for the purpose of solicitation must be sponsored by a registered MSU organization or university department.  After obtaining sponsorship, the outside organization or individual must follow the proper procedures as stated in the *Student Life Handbook* and other relevant publications.

- Solicitation in or around campus residences requires permission from the housing office and is governed by regulations published by the housing office which are located in the *Student Life Handbook* [].  Solicitation in the residence halls is not permitted on a door-to-door basis.

- Solicitation in or around the Curris Center is controlled by and requires advance permission from the director of the Curris Center.

- Solicitation at or around athletic events is normally prohibited.  If an exception to this general policy is to be made, it must be made by the director of intercollegiate athletics.

- Solicitation inside or around any campus building must be approved by the coordinator for that facility.

- There will be no solicitation during Summer Orientation.

MSU has also promulgated a "Policy on non-University speakers" which has been

in existence since at least 1975.  The policy appears in the Student Life Handbook and states:

**Policy on Non-University Speakers[2]**

Murray State University is committed to the concept that a university should encourage the free flow of ideas on all subjects, including controversial issues, and that all ideas should be subjected to objective, critical analysis.  Therefore, any registered student organization, academic department or administrative unit in which students are included may invite speakers of its choice to speak on campus.  (See policy on "Guidelines for Use of University Facilities.")  In addition, the sponsoring organization must see to it that the campus facility it uses for such an event is properly cared for and that at the conclusion of the event the facility is returned to its pre-use

---

[2]  In October of 1998 this passage was cited as justification for requiring John Duncan, a fellow evangelist and friend of Plaintiff, to leave the MSU campus, as he was not supported by any student organization.

4

condition.

The university shall not adopt any practice or policy which would result in censorship, except in the rare instance, in accordance with recent judicial interpretation, in which speaker's advocacy of a course of action would present a "clear and present danger" to the normal functioning of the university.

Under no circumstances shall a speaker's viewpoint be presented or advertised as being the viewpoint of Murray State University.

On August 25, 2000, following a visit to MSU by Plaintiff in April, a memorandum was issued by Robertson in which he stated, "It is vital that we observe all policies of the Board of Regents with respect to the use of university facilities in general and the use of facilities in connection with non-university speakers in particular." He forwarded a copy of the non-University speaker policy. A similar memorandum was issued on March 14, 2001, to a broader group of individuals.

On October 6, 2004, Plaintiff returned to MSU. While there he noticed that the Gideons, a non-university religious group had free access to the area west of Curris Center. He observed individuals associated with the Gideons passing out Bibles to students. In light of this, Plaintiff once again spoke with Baurer. He sought and received from Baurer a photocopy of the "Outdoor Facility Request Form: completed on behalf of the Gideons, which disclosed that the Gideons were granted permission to hand out bibles all around the MSU campus. The form did not show any sponsoring group. When Plaintiff questioned Baurer on this point, Baurer indicated that he assumed that he sponsored the Gideons since they did not have a sponsor and the facility request form came to his office.

Plaintiff requested that Baurer sponsor him. Baurer responded that he would personally sponsor him to stand on campus and distribute literature, but that he would limit the sponsorship to

5

the distribution of literature.  Plaintiff states that this frustrated his purpose of conversing with students and therefore he left the campus for fear of arrest.

On December 7, 2004, Plaintiff, through counsel, wrote to Baurer requesting that the solicitation/sponsorship policy be rescinded.  John Rall, General Counsel for MSU, sent a letter in response.  Rall indicated that Plaintiff was offered the same opportunity as the Gideons and rejected it and was entitled to nothing further.  Rall claimed MSU's policy to be sound and refused to rescind the policy.

On January 21, 2005, Plaintiff contacted Rall via email  regarding his continuing desire to engage in religious expression on the MSU campus.  Rall sent a letter to Plaintiff's counsel on January 26, 2005 which stated:

> Unfortunately, Mr. Gilles apparently believes there is some type of continuing offer under which he can speak at Murray State.  He is mistaken.  So there is no misunderstanding, the University fully intends strictly to enforce all of its rules and policies with all individuals and organizations, which includes Mr. Gilles and the Gideons.

On February 10, 2005, Plaintiff contacted Baurer by email and requested permission to speak on the campus from April 25-29, 2005, from 11:30 a.m. until 5:30 p.m.  The following day, Baurer emailed Plaintiff advising that if Plaintiff wanted to speak on campus he would need to receive sponsorship from a registered student organization[3], academic department, or administrative unit. Plaintiff responded asking Baurer and/or his administrative unit for their sponsorship.  On April 12, 2005, Baurer responded to Plaintiff, stating that neither he nor his office would offer Plaintiff sponsorship for the requested dates and times.

Plaintiff has not returned to the MSU campus to express his religious viewpoints since his

---

[3] There are currently 169 registered student organizations at MSU.

6

visit in October of 2004.  Plaintiff asserts that he fears he will be arrested if he attempts to engage in any form of expression on campus and is chilled and deterred from engaging in his desired speech.  Plaintiff indicates that if not for the action taken by MSU officials, he would return to MSU and convey his religious ideas and would like to return and speak at MSU sometime during the current school year.

**DISCUSSION**

A court must consider four factors when determining whether to grant or deny a preliminary injunction: "(1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001).  The first factor will often be determinative in First Amendment cases as even a minimal infringement on First Amendment values constitutes irreparable injury.  *Id.*  "[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment.  *Id.*  Additionally, it is always in the public interest to prevent a violation of a party's constitutional rights.  *Id.*

**I.      STANDING**

Defendants claim that Plaintiff lacks standing, arguing that his claimed injury will not be redressed even if the application of the solicitation/sponsorship policy is enjoined.  Defendants assert that the non-University speaker policy would continue to apply to Plaintiff and preclude him from speaking on campus without sponsorship.  Plaintiff argues that the non-University speaker policy does not prohibit or impose any limitation on Plaintiff or outside speakers generally while the

7

solicitation policy specifically requires outside speakers to obtain sponsorship and, therefore, enjoining the solicitation/sponsorship policy would redress Plaintiff's injury.

Standing consists of three elements: (1) the plaintiff must have suffered an injury in fact, i.e. an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *United States v. Hays*, 515 U.S. 737, 742-43 (1995).

The non-University speaker policy does not place any limitations on who may speak at MSU, instead it merely provides that "any registered student organization, academic department or administrative unit in which students are included may invite speakers of its choice to speak on campus." This limitation pertains to the ability of campus groups to invite speakers to MSU not the ability of non-University speakers to speak at MSU.  Thus, enjoinment of the solicitation/sponsorship policy would redress Plaintiff's claimed injury as Plaintiff would no longer be required to obtain sponsorship in order to speak on campus.

Therefore, this Court finds that Plaintiff has standing to seek injunctive relief.

## II.   LIKELIHOOD OF SUCCESS ON THE MERITS

## A.   Freedom of Speech

"State colleges and universities are not enclaves immune from the sweep of the First Amendment.  However, the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Bowman v. White*, 444 F.3d 967, 974 (8th Cir. 2006) (internal citations omitted).  "The standards by which limitations on speech must be evaluated 'differ depending on the character of the property at issue.'" *Frisby v. Schultz*, 487 U.S. 474, 479 (1988)

(quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983)).  Three types of fora have been identified: (1) the traditional public forum; (2) the public forum created by government designation; and (3) the nonpublic forum.[4]  *Id.* at 479-80.  Plaintiff argues that the areas of the MSU campus in which he seeks to speak are traditional public fora while Defendants argue that the MSU campus is now, at most, a designated public forum.

A traditional public forum is a place "which by long tradition or by government fiat has been devoted to assembly and debate."  *Perry*, 460 U.S. at 45.  Prototypical examples of public fora are public sidewalks, streets, and parks.  *United States v. Grace*, 461 U.S. 171, 177 (1983).  In a traditional public forum a regulation on speech cannot survive scrutiny unless the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.  *Perry*, 460 U.S. at 45.  The government may enforce regulations on the time, place, and manner of expression in a traditional public forum if the regulations are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.  *Id.*

A designated public forum is created by purposeful government action; "[t]he government does not create a designated public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse."  *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (internal quotation omitted).  If the government excludes a speaker who falls within the class to which a designated public forum is made generally available, its action is subject to strict scrutiny, i.e., the regulation on speech must be necessary to serve a compelling state interest and must be narrowly drawn to achieve that end.  *Id.*; *Perry*, 460

---

[4]  A designated public forum alternatively has been described as a limited public forum. *Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir. 2001) (citing *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998)).

U.S. at 45-46.

"The government can restrict access to a nonpublic forum as long as the restrictions [are] reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view." *Ark Educ. Television*, 523 U.S. at 677-78 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).

In *Widmar v. Vincent*, the Supreme Court held that a state university's refusal to grant a student religious group access to university facilities generally open to other student groups violated those students' First Amendment rights. 454 U.S. 263, 276 (1981). In a footnote the Court stated:

> This Court has recognized that the campus of a public university, at least for its students, possesses many of the characteristics of a public forum . . . At the same time, however, our cases have recognized that First Amendment rights must be analyzed in light of the special characteristics of the school environment. We continue to adhere to that view. A university differs in significant respects from public forums such as streets or parks or even municipal theaters. A university's mission is education, and the decisions of this Court have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities. We have not held, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings.

*Id.* at 268 n.5 (internal citations omitted). Relying in part on this statement, the Court of Appeals for the Fourth Circuit found that the University of Maryland's College Park campus was a limited public forum. *ACLU v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005). The court stated that the campus was unlike a public street, park, or theater, but instead was an institute of higher learning, devoted to its mission of public education. *Id.* Finding that this mission necessarily focused on the students and other members of the university community and had not traditionally been open to the public at large, the court found that the campus was a "special type of enclave" devoted to higher education. *Id.*; *see also Bowman v. White*, 444 F.3d 967, 977-78 (8th Cir. 2006) (stating that the

physical characteristics of the property are just one factor to examine in determining the type of fora; also pertinent are the traditional uses of the property, the objective use and purposes of the space, and the government intent and policy with respect to the property).  By implementing a policy providing for access to the campus' facilities by outsiders, the University had made the campus a limited public forum.  *Mote*, 423 F.3d at 444.

As with the University of Maryland, MSU's mission is education.  *See also Bowman*, 444 f.3d at 978 ("[A] university's function is not to provide a forum for all persons to talk about all topics at all times.  Rather a university's mission is education and the search for knowledge").  Under *Mote*, MSU is not required to treat the open areas of its campus as traditional public fora.  The MSU solicitation/sponsorship policy contained in the MSU Student Life Handbook allows solicitation only by those sponsored by a registered MSU organization or university department.  Thus, the open areas are not open to all speakers, rather only those who met the MSU criteria are allowed to solicit.  Therefore, for the purpose of this decision, the Court will consider the open areas of MSU's campus to be designated public fora.

This Court must next determine whether the speech policy impermissibly restrains free expression.  The State may be justified in "reserving [its forum] for certain groups or for the discussion of certain topics."  *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).  In order for the restriction to be valid it must not discriminate against speech on the basis of viewpoint and must be "reasonable in light of the purpose served by the forum."  *Id.* at 107 (quoting *Cornelius*, 473 U.S. at 806).

Here the MSU solicitation/sponsorship policy opens up the campus to solicitation by those

11

sponsored by a registered MSU organization or university department. Thus, MSU's policy reserves the forum for a certain group - those invited by student organizations or university departments. The policy is content-neutral on its face. *See Gilles v. Hodge*, No. 1:04-cv-00702, 2007 U.S. Dist. LEXIS 29369, at *23 (S.D. Ohio Apr. 20, 2007). Furthermore, the Plaintiff has not provided evidence that the solicitation/sponsorship policy results in viewpoint discrimination as applied. The Complaint does not allege that a condition of being a registered student organization is having no viewpoint associated with those of Plaintiff's. *See Bourgault v. Yudof*, 316 F. Supp. 2d 411, 420 (N.D. Tex. 2004). Moreover, even if there is no student organization that will agree to sponsor Plaintiff's speech, Plaintiff fails to allege that MSU prohibits student groups which hold views similar to Plaintiff's. As discussed by the *Bourgault* court:

> There is no evidence or allegation that student organizations are only permitted . . . if they hold certain beliefs, or that students would be prohibited from forming organizations because of their viewpoint on a particular topic. There is no reason for the Court to believe that students . . . cannot form an organization regardless of their viewpoints.

*Id.* at 420-21. Although Baurer refused to sponsor Plaintiff, Baurer's decision did not prohibit Plaintiff from obtaining sponsorship from a MSU student organization. Accordingly, for purposes of this decision the Court concludes that MSU's solicitation/sponsorship policy is content/neutral.

The purpose of MSU, as a forum, is education. MSU as an institution of higher education has a significant interest in "protecting the educational experience of the students in furtherance of [MSU's] educational mission." *Bowman*, 444 F.3d at 980. MSU furthers this educational mission by requiring sponsorship from a student organization because speech is thereby limited to matters in which at least one group of students is interested. *See Hodge*, 2007 U.S. Dist. LEXIS 29369, at *24. Thus, for purposes of this decision, the Court finds that MSU's solicitation/sponsorship policy

12

is reasonable in light of the purpose served by the forum.

Having determined that MSU's speech policy is both content-neutral and reasonable in light of the purpose served by the forum, the Court finds that for purposes of this decision, the solicitation/sponsorship policy does not violate Plaintiff's First Amendment rights.[5]

## B.     Vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A statute or policy is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 392 (1926). A statute or policy offends the First Amendment when it grants a public official "unbridled discretion" such that the official's decision to limit speech is not constrained by objective criteria, but may rest on "ambiguous and subjective reasons." *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996).

Plaintiff argues that the solicitation requirement is unconstitutionally vague. Plaintiff states that the problem is not with the term solicitation, at least not as that term is generally understood, but with how MSU enforces the solicitation requirement. Plaintiff argues that his speech has no relationship to solicitation as that term is understood.

In *Gilles v. Blanchard*, Plaintiff made a similar argument. In that case, Plaintiff challenged Vincennes University's solicitation policy which required prior approval by the dean of all

---

[5] In a factually similar case, decided recently by the Seventh Circuit, Judge Posner dispensed with the forum analysis and upheld the university's policy on the basis that it was consistent with limiting its facilities "to activities that further the interests of the university community." *Gilles v. Blanchard*, 477 F.3d 466, 473 (7th Cir. 2007).

solicitations on campus.  477 F.3d 466, 468 (7th Cir. 2007).  The term solicitation was defined in the policy as "the act of seeking to obtain by persuasion; to entice a person to action; or the recruiting of possible sales."[6]  *Id.*  Plaintiff challenged the policy as being vague.  *Id.* at 471. Addressing the issue, the court stated:

> The policy as interpreted by the defendants to cover preaching the Gospel is hopelessly vague and thus a supple weapon for excluding from the university lawn those outsiders whose message the university disapproves of.  But [Plaintiff] falls just short of prevailing because he has failed to show that *any* uninvited outsider has ever been permitted to use the lawn for any purpose.

*Id.* at 472.  Likewise, in the instant case, Plaintiff has failed to show that an uninvited outsider has been permitted to speak on campus.  Although Plaintiff does point to the distribution of Bibles by the Gideons, that activity was sponsored by Baurer.  Thus, this Court finds that there is not a substantial likelihood that Plaintiff will prevail on his claim that the solicitation requirement is void for vagueness.

Plaintiff also claims that the sponsorship provision is unconstitutionally vague as the policy contains no criteria to its requirement that speakers be sponsored by a student organization or university department.  This Court finds that the sponsorship provision is not vague.  The prohibitive terms are clearly defined so as a person of ordinary intelligence could readily define the standard for inclusion and exclusion.  *See Hodge*, 2007 U.S. Dist. LEXIS 29369, at *26.  All solicitation is prohibited unless invited by an MSU student organization or university department.  There is no allegation that MSU officials restrict the student organizations based upon content of prospective speech.

---

[6] The MSU solicitation sponsorship policy does not define the term "solicitation."  The term "solicitation" is defined in BLACK'S LAW DICTIONARY as "The act or an instance of requesting or seeking to obtain something; a request or petition."  BLACK'S LAW DICTIONARY 345 (2nd pocket ed. 2001).

Therefore, this Court finds that Plaintiff has failed to show a substantial likelihood of prevailing on his claim that the policy violates due process.

**C.        Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The classification is presumed to be valid and will be sustained if it is rationally related to a legitimate state interest.  *Id.* at 440.  However, a classification that singles out a suspect class or burdens a fundamental right will be subject to strict scrutiny.  *Dillinger v. Schweiker*, 762 F.2d 506, 508 (6th Cir. 1985).  "Strict scrutiny presumes the unconstitutionality of the classification absent a compelling governmental justification." *Id.*

If Plaintiff obtains sponsorship by a student organization or a university department he is free to speak on campus.  As stated above, there is no indication that MSU prohibits student organizations that share views similar to those of Plaintiff.  *See Blanchard*, 477 F.3d at 473 (finding such a limitation constitutional).  Thus, the classification does not single out a suspect class or burden a fundamental right.  Also, as discussed above, the solicitation/sponsorship policy is rationally related to MSU's educational mission.  Therefore, this Court finds that Plaintiff does not have a substantial likelihood of prevailing on his equal protection claim.

**III.     IRREPARABLE HARM**

Having found that there is not a substantial likelihood that Plaintiff's constitutional rights were violated, this Court finds that Plaintiff will not suffer irreparable harm absent an injunction.

15

This Court notes that, although he may be precluded from speaking at MSU absent a preliminary injunction, Plaintiff remains free to seek sponsorship by either an MSU student organization or university department.

## IV.   SUBSTANTIAL HARM TO OTHERS

If this Court were to grant Plaintiff a preliminary injunction, the Court would be interfering with MSU's educational mission. *See Bowman*, 444 F.3d at 978 ("[A] university's function is not to provide a forum for all persons to talk about all topics at all times. Rather a university's mission is education and the search for knowledge"); *Mote*, 423 F.3d at 444. The limits that MSU has placed on the use of its campus are consistent with limiting university facilities to activities that further the interests of the university community and this Court will not harm MSU and its students by interfering with those limits absent a violation of Plaintiff's constitutional rights. *See Blanchard*, 477 F.3d at 473.

## V.   PUBLIC INTEREST

This Court finds that the public interest does not lie in favor of the preliminary injunction as the grant of a preliminary injunction would require this Court to interfere with the educational mission of MSU. *See id.*

### CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for a Preliminary Injunction is DENIED. An appropriate order shall issue.